UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re                                              Case No. 09-11157-WRS
                                                   Chapter 7
DAVID BENTON DORSEY,

    Debtor

SUSAN SHIROCK DEPAOLA, TRUSTEE,

    Plaintiff                              Adv. Pro. No. 10-1006-WRS

  v.

DAVID BENTON DORSEY and
KARMEN M. DORSEY,

    Defendants

## MEMORANDUM DECISION

On June 8, 2011, the Court entered judgment in favor of Plaintiff Susan DePaola and against Defendants David and Karmen Dorsey. (Docs. 51, 52). In its June 8, 2011 judgment, the Court denied David Dorsey's discharge and avoided certain three transfers of real property from David Dorsey to Karmen Dorsey as fraudulent. The Defendants filed a timely motion to alter or amend the Court's judgment on June 22, 2011. (Doc. 53). The Court heard argument on the Defendants' motion on August 15, 2011. For the reasons set forth below, the motion is DENIED.

The Court will divide its discussion into four parts. First, it will address David Dorsey's contention that the judgment, insofar as it denies him a discharge, is not based upon the evidence. Second, it will address Karmen Dorsey's claim that she is entitled to a credit for a payment made by her. Third, it will address the Defendants' claim that Karmen's mother holds an equitable

mortgage on some or all of the subject property. Fourth, it will address David Dorsey's claim that any false statements made were the fault of his former counsel and that he should not be held responsible for his former lawyer's false statements.

## I. FACTUAL FINDINGS BASED ON THE EVIDENCE

The Defendants' first claim is that the Court's judgment, insofar as it denies David Dorsey's discharge pursuant to 11 U.S.C. § 727, is not based upon the evidence. (Doc. 53, pp. 4-8). The Court heard two days of oral testimony on February 2-3, 2011, and considered approximately 1,000 pages of documentary exhibits. The Court made detailed findings of fact in its June 8 Memorandum Decision. For example, "the Court heard the testimony of Dorsey at trial. Having considered his demeanor the Court finds that Dorsey is not credible and that he willfully misrepresented facts concerning a lien on the boat." (Doc. 51, p. 6). "The Court heard testimony from Dorsey and observed his demeanor at trial. Considering all relevant evidence, the Court finds that Dorsey willfully misrepresented his bank account information and thereby converted property of the estate." (Doc. 51, p. 9). The Court heard a considerable amount of testimony from Defendant David Dorsey and rejected most of it. That the Court made findings of fact which were contrary to his testimony does not mean that the Court erred, rather it means that it did not credit his testimony. Dorsey's claim that the denial of his discharge is not based upon the evidence is without merit.

## II. KARMEN DORSEY IS NOT ENTITLED TO A CREDIT

The Defendants' second claim of error is that they contend that Karmen Dorsey should have been given "credit to the extent of the value given to the mortgagors under § 8-9A-8(d) as a consequence of David's transfer." (Doc. 53, p. 9). The Defendants did not raise this defense in the pleadings and the Court did not address it in its Memorandum Decision. "The general rule is that, when a party fails to raise an affirmative defense in the pleadings, that party waives its right to raise the issue at trial." Hassan v. United States Postal Service, 842 F.2d 260, 263 (11th Cir. 1988). While the issue was not raised in the pleadings, Karmen Dorsey did give some notice in her pretrial brief. (Doc. 39).[1] Moreover, the Trustee does not argue that the issue has been waived in her brief. (Doc. 63). Accordingly, the Court will not conclude that the issue is waived. The Court will revisit the evidence and consider this issue on its merits.

### A. Facts Relating to Transfer of Residence

On July 31, 2000, David and Karmen Dorsey purchased a residence in Dothan, Alabama for $200,000. (Doc. 51, p. 16). On August 28, 2002, at a time when David Dorsey was aware that he would likely be sued by a former business partner, Tommy Andrews, Dorsey conveyed his undivided one-half interest in the Dothan residence to his wife Karmen for no consideration. David and Karmen lived together in the residence, together with their children, at all times subsequent to July 31, 2000. Karmen Dorsey was a homemaker and did not work outside the

---

[1] One may not avoid the consequences of failing to amend ones' pleadings through the expediency of filing a brief. Admittedly, the Trustee's complaint was not a pillar of excellence, but the Defendants were nonetheless on notice as to what defenses to raise in their pleadings.

3

home at any time between the year 2000, until the year 2009, when she returned to the workforce, working as a school teacher. (Doc. 51, pp. 2-3).

On September 19, 2003, Karmen Dorsey received $65,000.00 as an inheritance from the estate of her father. (Def. Ex. 8). On September 23, 2003, Karmen Dorsey used $52,135.48, to pay off the mortgage on the Dothan residence. (Def. Ex. 9). Karmen Dorsey was liable on the mortgage together with her husband. The mortgage payoff was made 13 months after the transfer from David to Carmen. The evidence does not establish that the payment was made as a consequence of the transfer of property from David to Karmen. Quite simply, David transferred his interest in his residence in an effort to place it beyond the reach of his creditors and Karmen paid off the mortgage in an effort to protect the homestead. The two events were independent of one another.

## B. Legal Basis for Karmen Dorsey's Claim for a Credit

Karmen Dorsey claims that she is entitled to a credit for her payment of mortgage using funds inherited by her based upon Alabama Code § 8-9A-8(d), which provides as follows:

> Notwithstanding the voidability of a transfer under this chapter, a good-faith transferee is entitled, to the extent of the value given the debtor for the transfer or to another person as a consequence of the debtor's making such transfer, to
>
> > (1) a lien on or a right to retain any interest in the asset transferred; or

4

> (2) a reduction in the amount of liabillity on the
> judgment.

Ala. Code § 8-9A-8(d). As is apparent from the plain language of this statute, it affords relief only to "good-faith transferees." To put the matter differently, if one is not a good-faith transferee, then § 8-9A-8(d) provides no relief. Moreover, relief is provided only "to the extent of the value given the debtor for the transfer or to another person as a consequence of the debtor's making such transfer." For Karmen Dorsey to qualify for relief, even if she is a good-faith transferee, she must prove that she gave value as a consequence of the transfer. These two contentions will be examined separately.

### 1. Karmen Dorsey was not a good-faith transferee

Neither terms "good-faith transferee" nor "good-faith" are defined in the applicable Alabama statutes. In addition, it does not appear that the term "good-faith transferee" has been defined by the Alabama Supreme Court. While the Defendants cite the case of <u>Horton v. Alexander</u>, 977 So.2d 462 (Ala. Sup. Ct. 2007), in support of their claim, the Alabama Supreme Court did not define the term there.

A recent decision handed down by a Bankruptcy Court in Georgia stated the following:

> The good faith of a transferee is determined through an objective consideration of what the transferee knew or should have known. (Citation omitted). Circumstances that would place a reasonable person on inquiry of a debtor's fraudulent purpose, or that show a diligent inquiry would have discovered the fraudulent purpose objectively prove a lack of good faith. (Citations omitted). Good

5

> faith thus requires not just a lack of actual knowledge of fraud, but also a lack of knowledge of circumstances requiring further investigation.

Kerr v. Hart (In re Christou), 2010 WL 4008167, *3 (Bankr. N.D. Ga. Sept. 24, 2010). Karmen Dorsey was aware that her husband was in the business of leasing trucks and was generally aware of his business dealings. Moreover, she knew or should have known that he was shortly to be sued by Tommy Andrews for more than one million dollars, and that this fact was David Dorsey's motivation for the transfer. While Karmen Dorsey was not actively involved in David's business, she had enough information to either know that her husband was transferring his interest in the home to her, for no consideration, in an effort to place it beyond the reach of creditors, or she had enough knowledge to put her on notice to inquire further, so as to discover his fraudulent intent. Having considered all of the evidence, the Court finds that Karmen Dorsey was not a good-faith transferee within the meaning of Alabama Code § 8-9A-8(d).

### 2. Karmen Dorsey's payment of the mortgage was not a payment as a consequence of David Dorsey's transfer to her

Even if Karmen Dorsey was a good-fath transferee, she would nevertheless not qualify for a credit under Alabama Code § 8-9A-8(d) because she failed to prove that the payment was "as a consequence of the debtor's making such transfer." Karmen Dorsey was legally obligated to pay the mortgage in any event. Whether David transferred his interest to her or not, she was nevertheless obligated on the mortgage. Moreover, the payment of the mortgage was made 13

6

months after the transfer from David. The evidence indicates that the two events were independent of one another. For a transferee to claim a credit for payments made on a mortgage on which she is liable is to strain the provision beyond all logic.

Karmen Dorsey cites the case of Horton v. Alexander, 977 So.2d 462 (Ala. 2007), in support of her claim. A review of the facts in Horton will show that it is not apposite here. The facts in Horton are as follows: Horton and his co-defendant Reynolds sold stock in a closely held corporation called Perky Cap Company, Inc. to four individuals who were insiders of Terry Manufacturing, Inc. The Perky Cap stock was sold on credit, with Horton and Reynolds taking promissory notes from the four individuals. Terry Manufacturing did not receive any interest in Perky Cap and it was not obligated on the promissory notes to Horton and Reynolds. Notwithstanding this, Terry Manufacturing paid almost $600,000 to Horton and Reynolds satisfying most of the indebtedness owed on the promissory notes. Terry Manufacturing later filed bankruptcy.

Alexander, Terry Manufacturing's trustee in bankruptcy brought suit against Horton and Reynolds asserting that the $600,000 payments were fraudulent conveyances. Terry Manufacturing was insolvent at the time of the transfer and it did not derive any benefit as a result of the transfer. Horton and Reynolds raised a defense pursuant to Ala. Code § 8-9A-8(d), contending that they fit within parameters of that statute. The trustee there did not dispute that Horton and Reynolds had acted in good faith nor was it disputed that the value was given as a consequence of the transfer. Neither of those conditions are present here.

Horton and Reynolds were unrelated to Terry Manufacturing and the four insiders. It was undisputed in Horton that the transaction was made at arms length. Clearly, Horton and

7

Reynolds gave value in that for every dollar paid by Terry Manufacturing, one dollar was deducted from the indebtedness owed by the insiders as a result of the Perky Cap sale. The issue in Horton was whether the defendants had to show an indirect benefit to Terry Manufacturing, the debtor, or whether benefit to insiders was sufficient. The Alabama Supreme Court held that a transferee seeking the protection of Ala. Code § 8-9A-8 need not show that the debtor received any benefit. Horton v. Alexander, 977 So.2d 462 (Ala. 2007).

Neither Ala. Code § 8-9A-8, nor Horton v. Alexander, provide Karmen Dorsey any relief here. First, Karmen Dorsey was not a good-faith transferee. Second, she failed to show that the payment of her mortgage was "as a consequence" of her husband's transfer of his one-half interest in the homestead to her. Indeed, the Alabama Supreme Court in Horton v. Alexander did not deal with either of these questions.

### III. MAXINE MUTTER IS NOT ENTITLED TO AN EQUITABLE MORTGAGE

Karmen Dorsey's mother, Maxine Mutter, testified at trial, but is not a party to these proceedings. She testified that she transferred money to her daughter or made payments on her behalf. However, the Defendants' claim that Maxine Mutter is entitled to an equitable mortgage is without merit. As a threshold matter, if Maxine Mutter believes she has a claim, she must make it herself. David and Karmen Dorsey may not make a claim on behalf of Ms. Mutter. "The party asserting standing must be asserting his own rights and not the rights of a third party[.]" Springer v. Spivery, 127 B.R. 702, 705 (Bankr. M.D.Fla. 1991) (citing E.F. Hutton & Co., Inc.

8

V. Hadley, 901 F.2d 979, 985 (11th Cir. 1990) ("[T]he bankruptcy trustee does not have standing to assert claims of creditors of the bankrupt.")); see also Caplin v. Marine Midland Grace Trust Co., 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed. 2d 195 (1972) (Bankruptcy trustee cannot assert the claims of the bankrupt estate's creditors.). Ms. Mutter is a third party and the Defendants are attempting to use this adversary proceeding to assert her rights. This cannot be done and therefore, the Court does not accept the claim that Ms. Mutter has an equitable mortgage as a defense for the fraudulent transfers.

### IV. DORSEY IS ACCOUNTABLE FOR THE MISSTATEMENTS OF HIS LAWYER

Subsequent to the filing of the Defendants' motion to alter and amend, Matthew Brunson, counsel for Defendant David Dorsey, withdrew his appearance. (Docs. 57, 61). At the August 15, 2011 hearing, David Dorsey's new counsel argued that the Court should reconsider its denial of David Dorsey's discharge, contending that the fault for the misstatements and nondisclosures was Brunson's and not Dorsey's. This contention is rejected for two reasons. First, aside from Brunson's misconduct, there was more than enough bad conduct which was solely attributable to Dorsey so as to justify the denial of his discharge. Second, and probably more important, the debtor in a bankruptcy case bears responsibility for the actions of his lawyer.

The Court heard several hours of testimony from David Dorsey and reviewed voluminous documentary exhibits offered by the parties as well as reviewing its record in Dorsey's underlying Chapter 7 case. The Court took Brunson to task in its Memorandum Decision for

9

Brunson's false statements as to whether there was a UCC filing which might have perfected a security interest which Dorsey claimed was held by his friend Teddy Vaughan. (Doc. 51, pp. 3-7).

There are basically two ways a debtor might conceal property from the Court. First, he can simply fail to disclose it. Such was the case here with respect to certain bank accounts (Doc. 51, pp. 7-9), Dorsey's various business interests (Doc. 51, pp. 11-13), and certain personal property. (Doc. 51, pp. 13-15). The second way property can been concealed is to schedule the property, but falsely claim that it is subject to a security interest in an amount equal to or greater than its value, leaving no value for the Trustee to realize. Such was the case with Dorsey's boat. (Doc. 51, pp. 3-7). The boat was disclosed, but a security interest was falsely scheduled. When both Trustee Hamm and Trustee DePaola inquired as to a UCC filing, both Dorsey and Brunson made false statements in an effort to keep the property from the estate. It is an unfortunate fact of life that some debtors testify falsely in an effort to cheat their creditors. What raised the Court's concern here was Brunson's complicity in Dorsey's fraud.

When a debtor and his lawyer work together to file schedules and statements, both are under a duty to take sufficient action to make sure that the disclosures are accurate and complete. Rule 1008 of the Federal Rules of Bankruptcy Procedure requires that all petitions, lists, schedules, and statements be filed under the penalties for perjury. Rule 9011 places a duty upon a lawyer to make an inquiry reasonable under the circumstances to make sure that the papers he files are accurate. When Brunson filed Dorsey's Schedules, both were under a duty to make sure that the Schedules were accurate. With this in mind, when Brunson stated that "it was my

10

understanding that there is a UCC filed on it," (Doc 51, p. 4) he was under a duty to make sure that the information was correct. In fact, there was no promissory note, security agreement, or UCC-1 Financing Statement and both Dorsey and Brunson were well aware of that fact. Brunson knowingly filed false statements with the Court and made false statements to the Trustee in an effort to assist Dorsey in carrying out his fraud. Dorsey's argument, that he was the unwitting victim of Brunson's fraud on the Court is not credible. While Brunson certainly prepared the Schedules, the information as to Teddy Vaughan's security interest had to have come from Dorsey. It is simply illogical for Dorsey to assert that Brunson made this up without Dorsey's active participation.

It is well established that a client is bound by the acts of his lawyer and must suffer the consequences of his actions. <u>Pioneer Investment Services v. Brunswick Associates, Ltd.</u>, 507 U.S. 380, 396, 113 S.Ct. 1489, 1499, 132 L.Ed.2d 74 (1993)(client suffered consequences of lawyer's failure to timely file proof of claim in bankruptcy proceeding); <u>Link v. Wabash RR Co.</u>, 370 U.S. 626, 633, 82 S.Ct. 1386, 1390, 8 L.ed.2d 734 (1962)(client suffered dismissal of his claim resulting from his lawyer's decision not to appear at pretrial conference because he thought other business more pressing). The rule of <u>Link v. Wabash RR Co.</u>, is sometimes called "your lawyer, your fault." Indeed, were it otherwise, the Court would be forced to come between a client and his lawyer to make sure that the client's interests were protected. This would infringe on the attorney-client relationship and place the court in an untenable position as it would then be both a neutral decision maker and an advocate for one or both parties, making sure that they were adequately represented by their lawyers. For the reasons set forth above, the Court finds that Brunson and Dorsey acted together in attempting to defraud creditors. Even if it were not so,

even if all of the wrongdoing was solely the fault of Brunson, Dorsey would nevertheless suffer the consequences as a result of the "your lawyer, your fault rule."

## V. CONCLUSION

The Defendants make four claims of error, three of which were raised in their motion and an additional which was raised at the August 15, 2011 hearing. The denial of David Dorsey's discharge is based upon a wealth of evidence. The Trustee proved her Section 727 case half a dozen times or more over. David Dorsey's arguments to the effect that there was insufficient evidence offered at trial to deny his discharge falls considerably short of the mark. Karmen Dorsey's argument that she is entitled to a credit pursuant to Ala. Code § 8-9A-8 fails for two reasons. First, she is not a good-faith transferee. Second, Karmen's payment of her mortgage was not made as a consequence of David's transfer to her. The Defendants' contention that Karmen's mother, Maxine Mutter, has an equitable mortgage fails because they are not competent to make that claim on her behalf. Lastly, David Dorsey's claim that any wrongdoing was the fault of his former lawyer and should not operate to penalize him fails on all accounts. As a factual matter, David Dorsey was not an innocent bystander but rather an active participant in the attempted fraud on the creditors. As a legal matter, even if all of the bad acts were solely attributed solely to Brunson, Dorsey would nevertheless bear the brunt under the "your lawyer, your fault," rule.

Done this 17th day of October, 2011.

/s/ William R. Sawyer
United States Bankruptcy Judge

c: Susan S. DePaola, Trustee
  Anne S. Sumblin, Attorney for Karmen Dorsey
  Charles Matthew Brunson, Attorney for David Dorsey